United States District Court
Southern District of Texas
**ENTERED**
January 18, 2016
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SHAN KOVALY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-2599 |
| | § | |
| WAL-MART STORES TEXAS, LLC, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant Wal-Mart Stores Texas, LLC's ("Wal-Mart" or "Defendant") Motion for Summary Judgment on Exemplary Damages ("Exemplary Damages Motion") [Doc. # 71], Wal-Mart's Motion to Strike Expert Testimony of Valerie Purcell ("Motion to Strike") [Doc. # 72],[1] and Wal-Mart's Motion in Limine [Doc. # 81].  Plaintiff Shan Kovaly ("Kovaly" or "Plaintiff") filed responses to the Exemplary Damages Motion [Doc. # 82] and the Motion to Strike [Doc. # 84],[2] and Wal-Mart replied [Docs. # 85, # 86,

---

[1]    Wal-Mart also filed a Motion to Strike Expert Testimony of Bill C. Pittman (the "Pittman Motion") [Doc. # 80].  At Docket Call, Plaintiff's counsel represented that Plaintiff will not call Pittman as a witness at trial.  The Pittman Motion is **denied as moot**.

[2]    Plaintiff argued that Defendant's Motions are untimely.  As indicated at Docket Call, the Court disagrees and holds the Motions are timely filed except as explained below.

respectively].   Plaintiff did not file a written response to Wal-Mart's Motion in Limine.   At Docket Call on January 12, 2016, the Court heard argument on the pending motions.   At that time, Plaintiff made an oral motion in limine ("Plaintiff's Limine Motion").

The Court granted in part the Exemplary Damages Motion, reserved its ruling on the remaining motions, and requested supplemental briefing from the parties.   Plaintiff and Defendant timely filed their Supplemental Briefs [Docs. # 96, # 97, respectively].   Defendant's Supplemental Brief [Doc. # 97] included a Motion for Judicial Notice.   Plaintiff responded to the Motion for Judicial Notice [Doc. # 99].   The Court now makes the following rulings.

## I.   <u>EXEMPLARY DAMAGES MOTION</u>

Texas law permits recovery of exemplary damages where a defendant has been grossly negligent.[3]   To prove gross negligence, a plaintiff must show that (1) "viewed objectively from the actor's standpoint," the act "involve[d] an extreme degree risk, considering the probability and magnitude of the potential harm to others" *and* (2) the actor had "actual, subjective awareness of the risk

---

[3]      Plaintiff also originally argued in the alternative that exemplary damages are available where a defendant acted with malice.   At Docket Call, Plaintiff's counsel indicated they were not pursuing this theory.   In any event, the Court granted summary judgment for Defendant on the issue of malice as this theory was without factual support.

involved, but nevertheless proceed[ed] in conscious indifference to the rights, safety, or welfare of others." *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (*per curiam*). Defendant Wal-Mart moved for summary judgment on the ground that Plaintiff Kovaly has not created a genuine issue of material fact as to gross negligence. The Court reserved judgment until the close of Plaintiff's case in chief on the issue of whether Defendant had knowledge of "an extreme degree of risk." Because the parties dispute the legal standard for "extreme degree of risk," the Court provides the following guidance.

Under Texas law, an "extreme degree of risk" is a "function of both the probability and magnitude of the anticipated injury to the plaintiff." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994), *superseded by statute on other grounds as stated in U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012). Plaintiff suggested at Docket Call that this test operates as a sliding scale, where the two factors, the magnitude of potential harm and the probability of that harm, can be inversely proportional.[4] That position has been rejected by the Texas Supreme Court. *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 327 (Tex.

---

[4]     At Docket Call, Plaintiff's counsel explained that he believed that an extreme degree of risk could be "a very, very high likelihood of something bad happening, or it can be a lesser risk, but still a substantial risk, of an extremely bad outcome." Digital Recording of Docket Call, Jan. 12, 2016. Counsel did not cite any authority for this point and has not submitted any in the supplemental briefing.

1998) (stating that grossly negligent conduct must "impose an *extreme risk* creating the *likelihood* of serious injury); *Moriel*, 879 S.W.2d at 22 ("[T]he 'extreme risk' prong is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather 'the likelihood of serious injury' to the plaintiff."). The Texas Supreme Court in *Alexander* explained that a sliding scale approach "would inevitably eliminate any meaningful distinction between negligence and gross negligence." 868 S.W.2d at 327. The Fifth Circuit has followed this rule in applying Texas law. *See Henderson v. Norfolk S. Corp.*, 55 F.3d 1066, 1070–71 (5th Cir. 1995). "The standard for proving gross negligence under Texas law is considerably more stringent than the 'reasonable person' standard for ordinary negligence." *Id.*, at 1070 (citing *Alexander*, 868 S.W.2d at 326). "The plaintiff must thus show that the defendant's conduct created a strong likelihood of serious harm, 'such as death, grievous physical injury, or financial ruin.'" *Id.* (quoting *Moriel*, 879 S.W.2d at 22). "*Moriel* requires [plaintiffs] to prove *not only* that the defendants' omissions created a risk of serious harm, *but also* that the likelihood of the harm occurring was more than remote." *Id.* (emphasis added). "Proof of both prongs [of 'extreme degree of risk'] is required before a plaintiff may recover punitive damages." *Id.* (citing *Moriel*, 879 S.W.2d

at 23).  For exemplary damages, Kovaly must show both an elevated likelihood of harm *and* that the magnitude of the harm was very substantial.[5]

## II.  <u>MOTION TO STRIKE</u>

Plaintiff has designated Valerie Purcell ("Purcell"), the Chief Nurse Consultant at LifeCare Collaborative (a board-certified life care planning organization that specializes in litigation support), to testify regarding certain medical issues and expenses.  Defendant has moved to strike portions of Purcell's opinions[6] because Purcell impermissibly relies on opinions of her LifeCare Collaborative colleague, Al Davies, M.D. ("Dr. Davies"), and because the opinions lack probative value in that they are not shown to be grounded on a reasonable medical probability that Kovaly will incur the questioned future medical expenses.

### A.  <u>Reliance on Dr. Davies</u>

Defendant Wal-Mart objects to the portions of Purcell's report that were written by Dr. Davies.  Dr. Davies is the Physician-in-Chief at LifeCare

---

[5]  In addition, Kovaly must show Defendant had an "actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others."  *Henderson*, 55 F.3d at 1070 (quoting *Moriel*, 879 S.W.2d at 23).

[6]  Defendant specifically moves to strike portions of Purcell's expert report.  The report itself will not be admitted at trial.  The Court deems the Motion to Strike a motion in limine regarding the subject matter of Purcell's opinion testimony at trial.

Collaborative.  Defendant first objects because Dr. Davies himself was neither designated nor disclosed as an expert, and thus Defendant could not notice Dr. Davies' deposition during discovery.  The Court is unpersuaded.  The report in question was signed by both Purcell and Dr. Davies.  *See* Report  [Doc. # 72-2], at 21.  Further, the report is written in the first-person plural.  Defendant was on notice that Dr. Davies had contributed to the report.  Defendant was given sufficient opportunity to depose Dr. Davies, both before the Court granted summary judgment and after the case was remanded by the Court of Appeals for trial in September, 2015.

Furthermore, as an expert witness, Purcell may rely on reliable sources that are otherwise inadmissible.  *See* FED. R. EVID. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."); *Greenwood Utils. Comm'n v. Miss. Power Co.*, 751 F.2d 1484, 1495 (5th Cir. 1985) ("[W]hen an expert's opinion is based on facts not admissible in evidence the court should make a threshold factual inquiry to determine whether the data providing the basis for the opinion is of a type reasonably relied on by experts in that field to form such opinions. . . .  [D]eference ought to be accorded to the expert's view that experts in his field reasonably rely on such sources of information."); *Concise Oil & Gas P'ship v. La. Intrastate Gas Corp.*, 986 F.2d

6

1463, 1476 (5th Cir. 1993) ("[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." (quoting *Christopherson v. Allied Signal Corp.*, 939 F.2d 1106, 1111 (5th Cir. 1991) (*en banc*))).   Although Defendant's counsel raised the issue at Docket Call, no substantive briefing or argument concerning the *reliability* of Dr. Davies' views or his qualifications has been submitted, and the time for *Daubert* motions has passed.[7]

### B.     Reasonable Medical Probability

Under Texas law, to be entitled to damages for future medical expenses, a plaintiff must show that there is a "reasonable medical probability" that he will need the future medical treatment that is the basis for such damages.  The parties agree in their supplemental briefs that "reasonable medical probability" means that

---

[7]     In the Motion to Strike [Doc. # 72], Defendant explains that "the little Defendant knows about Dr. Davies is that he is allegedly an endocrinologist and an internist," which, according to Defendant, "does not match the subject matter of the Report." *Id.*, at 12.  Defendant contends that Dr. Davies' opinions may not be reliable because he apparently is not a cardiologist and does not have "specialized knowledge" to testify to Kovaly's need for future cardiology treatment. *Id.*  These matters may be the subject of cross-examination of Purcell.  It is noted, however, that Plaintiff has the burden to demonstrate his expert's opinions are reliable. *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001) ("[T]he proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable." (citation and quotation omitted)).

7

there is a greater than a 50% chance the future treatment will be needed.  *See* Kovaly Supplemental Brief [Doc. # 96], at 1; Wal-Mart Supplemental Brief [Doc. # 97], at 7–8; *see also Jelinek v. Casas*, 328 S.W.3d 526, 532–33 (Tex. 2010) (citing *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 399–400 (Tex. 1993)); *Paez v. Gelboym*, 578 F. App'x 407, 408 (5th Cir. 2014) (*per curiam*) (affirming application of the reasonable medical probability standard).  The Court agrees that this standard is consistent with Texas state law.

### 1.    Purcell's Testimony Regarding Heart Transplant

At Docket Call, the parties disputed whether Purcell could opine that Plaintiff Kovaly may eventually need a heart transplant.  In his supplemental brief, Plaintiff concedes that Purcell's report indicates that Purcell and Dr. Davies do not conclude that it is more likely than not that Plaintiff will need a heart transplant. Kovaly Supplemental Brief [Doc. # 96], at 2.  Purcell therefore is not permitted to testify regarding Plaintiff's potential need for a heart transplant.  The Court **grants** Defendant's Motion to Strike to this extent.

### 2.    Dr. Russell's Testimony Regarding Heart Transplant

Plaintiff represents that another of its expert witnesses, Raymond Russell, M.D. ("Dr. Russell"), who is board-certified in cardiovascular diseases, addressed the reasonable medical probability of a heart transplant in his deposition.  *See* Plaintiff's Supplemental Brief [Doc. # 96], at 2 n.1.  Defendant's Motion in Limine

included a request that Dr. Russell not be permitted to testify to subjects "outside the scope of his designation," and not opine on Plaintiff's future medical care. Doc. # 73, at 3, ¶ 16.

Dr. Russell's expert report, dated June 17, 2014, addressed only causation of past medical injuries.[8]   He also opined in passing that the "medical care and treatments Mr. Kovaly received following the in-stent thrombosis and subsequent STEMI were usual and customary" and "were made necessary as a direct result of his inability to fill his prescription for aspirin and Plavix."  Russell Report [Doc. # 39-3], at 3–4.  "It is further [Dr. Russell's] opinion that had Mr. Kovaly received the 72-hour emergency supply of aspirin and Plavix, the in-stent thrombosis, and all of the resultant complications would not have happened."  *Id.*, at 4.  There was no mention of future medical needs or the potential of a heart transplant.

Plaintiff now suggests that Dr. Russell's deposition may serve as an expansion of his report to include an opinion that Plaintiff—to a reasonable degree of medical certainty—will require a heart transplant at some unspecified time in the future.   Plaintiff relies on *Southern Pacific Transportation Co. v. Builders*

---

[8]     Dr. Russell opined repeatedly that the inability of Plaintiff "to take the combination of Plavix and aspirin because he could not get the prescription filled" caused Plaintiff to suffer an in-stent thrombosis, which resulted in a "very large STEMI" (ST-elevation myocardial infraction).  Russell Report [Doc. 39-3], at 2, 4.

*Transport, Inc.*, Civ. A. No. 90-3177, 1993 U.S. Dist. LEXIS 7380 (E.D. La. May 25, 1993) (Clement, J.).   In that case, the challenged expert testimony related to *new* factual information that the expert acquired after he submitted his written report.   *Id.*, at *48.

Plaintiff's effort to introduce at trial an opinion by Dr. Russell about any likelihood of Plaintiff's need for a heart transplant is rejected.   All of Plaintiff's medical records were available to Dr. Russell, but he did not opine on the reasonable medical probability of any specific future medical care or the likelihood that Kovaly may need a heart transplant in the future.[9]   The fact that Plaintiff elicited some testimony by Dr. Russell in his deposition does not change this result under the circumstances presented.   Defendant's Motion in Limine to limit the subject matter of Russell's testimony is **granted**.

---

[9]   Plaintiff's cited legal authority is unavailing.   Plaintiff appears to contend that Purcell's report constitutes newly acquired information.   The Court is unpersuaded that analysis of facts in one expert report offered by a party constitutes new factual information to justify another expert for that party's expansion of his opinions to cover a new and complex medical topic.   *Cf. S. Pac. Transp.*, 1993 U.S. Dist. LEXIS 7380, at *48 (permitting expert to testify as to measurements taken after the submission of his report).   Moreover, Plaintiff concedes that Purcell does not opine there is a reasonable medical probability Kovaly will need a heart transplant. Purcell and Dr. Davies' opinions therefore do not provide a *reliable* (or timely) basis for Russell to render an expert opinion that Kovaly will need a heart transplant.

### 3.    Damages for Future Heart Transplant

Defendant Wal-Mart objects to Purcell's calculation of the future medical expenses related to any heart transplant.  *See* Purcell Report [Doc. # 72-2], at 16, Table 3.  As noted, Plaintiff has not pointed to reliable bases for an expert opinion that there is a reasonable medical probability of Kovaly's need for a heart transplant.  Nor is there reliable evidence supporting an opinion on the timing of any such procedure.  The Court concludes that Purcell's opinions on the costs of a heart transplant are irrelevant and speculative, and thus are inadmissible

### 4.    Other Future Medical Damages

Under Texas law, damages for future medical expenses may be based on a plaintiff's past medical experiences where the latter support a reasonable medical probability of future costs.  *Rosenboom Machine & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *see also Rodriguez v. Larson*, 250 F. App'x 607, 609 (5th Cir. 2007).  Defendant Wal-Mart's objections to to testimony by Purcell as to any future medical expenses boil down to the argument that she is not a physician, that is, she lacks the purported medical expertise of Dr. Davies.  *See* Wal-Mart Supplemental Brief [Doc. # 97], at  11–13.  As noted, Defendant's objections to Purcell's reliance on Dr. Davies' input are not timely or supported adequately.  Nevertheless, these matters may be raised as impeachment of Purcell's opinions.  This limine challenge to Purcell's

11

opinions on future non-heart transplant damages is rejected.  Defendant's Motion to Strike is **denied** as to the non-heart transplant opinions of Purcell regarding future medical expenses.

## III.   PLAINTIFF'S LIMINE MOTION AND DEFENDANT'S MOTION FOR JUDICIAL NOTICE

At Docket Call, Plaintiff made an oral motion in limine to limit Defendant's ability to reference Texas Health and Safety Code § 483.042 at trial ("Plaintiff's Limine Motion").  In addition, Defendant has moved for judicial notice that "under Texas law [*i.e.*, § 483.042], a person commits a criminal offense if the person delivers a dangerous drug unless the drug is delivered by a pharmacist under a *prescription*, as that term is defined by the Texas Health & Safety Code § 483.001(13)."   Wal-Mart Supplemental Brief ("Motion for Judicial Notice") [Doc. # 97], at 6.  It is undisputed that the requirements of this section apply to dispensation of Plavix.

Federal courts are required to take judicial notice of the content of state law. *E.g.*,  *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987) (citing *Lamar v. Micou*, 114 U.S. 218, 223 (1885) ("The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or

proof.")); *see* WEINSTEIN'S FEDERAL EVIDENCE § 201.52 (2015).[10]  Therefore, in

general, the meaning of § 483.042 is a proper subject for judicial notice.  Indeed,

regarding this very section, one Texas court has stated "[w]e may *judicially notice*

that a pharmacist cannot legally prescribe medication, and is even prohibited from

dispensing a dangerous drug . . . without a *valid* prescription from a [medical]

practitioner."  *Nail v. Laros*, 854 S.W.2d 250, 253 (Tex. App.—Amarillo 1993, no

writ) (emphasis added).   Similarly, in a tort case, where a plaintiff sought to rely

on § 483.042 as the standard of care in a negligence *per se* claim, a Texas Court of

Appeals rejected expert testimony regarding the meaning of this statute because

"the construction of the pharmacy rules involves questions of law for the court, not

questions of fact for a pharmacist."   *Drennan v. Cmty. Health Inv. Corp.*, 905

S.W.2d 811, 824 (Tex. App.—Amarillo 1995, no pet.).

The parties dispute whether the Fifth Circuit's decision in this case precludes

the Court from interpreting § 483.042.  They also proffer competing interpretations

---

[10]     Defendant moved for judicial notice pursuant to Federal Rule of Evidence 201. Wal-Mart Supplemental Brief [Doc. # 97], at 6.  Rule 201, however, does not govern judicial notice of state law.   *See* WEINSTEIN'S FEDERAL EVIDENCE § 201.50 (2015); 21B KENNETH W. GRAHAM, FEDERAL PRACTICE & PROCEDURE § 5103.1 (2d ed.) ("The Advisory Committee excluded 'judicial notice of law' from the scope of Rule 201.  The Committee argued that determination of law should be governed by rules of procedure, not by the Evidence Rules.").  The Court decides the Motion for Judicial Notice according to the background principle of common law stated in *Kucel*, 813 F.2d at 74.

of § 483.042.  For reasons explained hereafter, the Court concludes that it must interpret the statute and that the plain text of the statute makes the meaning clear. Plaintiff's Limine Motion is **denied** and Defendant's Motion for Judicial Notice is **granted**.

The statute in issue is part of the Texas Dangerous Drug Act, which is codified as Chapter 483 of the Texas Health and Safety Code.  The disputed provision of § 483.042 provides as follows:

(a)    A person commits an offense if the person delivers or offers to deliver a dangerous drug:

(1)    unless:

(A)    the dangerous drug is delivered or offered for delivery by a pharmacist under:

(i)    a prescription issued by a practitioner described by Section 483.001(12)(A) or (B);

(ii)    a prescription signed by a registered nurse or physician assistant in accordance with Subchapter B, Chapter 157, Occupations Code; or

(iii)    an original written prescription issued by a practitioner described by Section 483.001(12)(C); and

(B)    a label is attached to the immediate container in which the drug is delivered or offered to be delivered and the label contains the following information:

(i)    the name and address of the pharmacy from which the drug is delivered or offered for delivery;

(ii)    the date the prescription for the drug is dispensed;

      (iii)   the number of the prescription as filed in the prescription files of the pharmacy from which the prescription is dispensed;

      (iv)   the name of the practitioner who prescribed the drug and, if applicable, the name of the registered nurse or physician assistant who signed the prescription;

      (v)   the name of the patient and, if the drug is prescribed for an animal, a statement of the species of the animal; and

      (vi)   directions for the use of the drug as contained in the prescription . . . .

The term "prescription" used in § 483.042 is specifically defined in § 483.001, the definitions section for Chapter 483:

      In this chapter . . . .

      (13)   "Prescription" means an order from a practitioner, or an agent of the practitioner designated in writing as authorized to communicate prescriptions, or an order made in accordance with Subchapter B, Chapter 157, Occupations Code, or Section 203.353, Occupations Code, to a pharmacist for a dangerous drug to be dispensed that states:

      (A)   the date of the order's issue;

      (B)   the name and address of the patient;

      (C)   if the drug is prescribed for an animal, the species of the animal;

      (D)   the name and quantity of the drug prescribed;

      (E)   the directions for the use of the drug;

      (F)   the intended use of the drug unless the practitioner determines the furnishing of this information is not in the best interest of the patient;

15

(G)    the name, address, and telephone number of the practitioner at the practitioner's usual place of business, legibly printed or stamped; and

(H)    the name, address, and telephone number of the licensed midwife, registered nurse, or physician assistant, legibly printed or stamped, if signed by a licensed midwife, registered nurse, or physician assistant.

The parties dispute whether it is necessary for a purported prescription to include the quantity of the prescribed drug in order for a pharmacist to qualify for the exception from criminal liability in § 483.0042(a)(1).   In this case, the applicability of that exception is pertinent to whether Defendant's pharmacist was exposed to criminal liability when presented with the orders for drugs written by Plaintiff's doctor.

The Fifth Circuit did not interpret § 483.042.   In ruling on Defendant's *Daubert* motion [Doc. # 43], this Court had concluded that the criminal offense described in § 483.042 confirmed that certain expert testimony by one of Plaintiff's expert witnesses, Bennett Brooke ("Brooke"), was not based on reliable facts or data. *See* Memorandum and Order [Doc. # 57].   The Fifth Circuit disagreed with this reliability determination.   The Fifth Circuit relied on the distinction in a common law negligence action between a standard of care for practitioners and legislative enactments. *See* Opinion [Doc. # 66], at 6 (*Kovaly v. Wal-Mart Stores Texas, L.L.C.*, __ F. App'x __, 2015 WL 5561288, at *2 (5th Cir. Sept. 22, 2015)

("The standard of care for Texas pharmacists is not governed by statute but is the standard of how a 'reasonably prudent pharmacist would have acted.'" (quoting *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455, 467 (Tex. App.—Austin 2000, pet. denied)). Indeed, the Fifth Circuit did not address the meaning of any state statute or regulation. The Fifth Circuit's determination that Brooke may testify to his view of the applicable standard of care for pharmacists in certain circumstances is not a ruling on the legal meaning of § 483.042.

The parties also dispute whether the Wal-Mart pharmacist would have been exposed to criminal prosecution under § 483.042 for providing Plavix to Plaintiff when the prescribing doctor failed to note on the drug order the quantity of pills to be dispensed. Plaintiff contends that the presence of a quantity on the prescription is not pertinent to the offense described in § 483.042 because "quantity" is not among the items required to appear on the medication label. Kovaly Supplemental Brief [Doc. # 96], at 3. Plaintiff's interpretation is unpersuasive. The term "prescription" appears in § 483.042 in several significant places. *See* § 483.042(a)(1)(A)(i), (ii), and (iii); *see also* § 483.042(a)(1)(B)(ii), (iii), (iv), and (vi). Plaintiff ignores the detailed statutory definition of "prescription," a seminal term in § 483.042. The definitions in § 483.001 of the Texas Dangerous Drugs Act govern the use of the terms throughout Chapter 483. *See* TEX. HEALTH & SAFETY CODE § 483.001(13) ("In *this chapter* [483]. . . 'prescription' means . . . ."

17

(emphasis added)).  All references in § 483.042 to "prescription" thus incorporate the statutory definition of the term.

Most significantly, the first element of the exception to criminal liability in § 483.042(a)(1)(A) requires that the pharmacist be acting pursuant to a "prescription."  Merely acting at the directive of a qualified practitioner and labelling the drug container are insufficient under § 483.042.  Accordingly, several Texas courts have described the statute as referring to a *valid* prescription.  *Swain v. Hutson*, No. 02-11-00119-cv, 2011 WL 6415118, at *10 (Tex. App.—Fort Worth Dec. 22, 2011, no pet.) (mem. op.) (noting that § 483.042(a)(1) "require[s], in part, a *valid* prescription as well as a label, attached directly to the bottle, that names the prescribing practitioner" (emphasis added)); *Nail*, 854 S.W.2d at 253 ("[A] pharmacist . . . is . . . prohibited from dispensing a dangerous drug . . . without a *valid* prescription from a practitioner." (emphasis added)).

The Court therefore is unpersuaded by Plaintiff's contention that no potential criminal liability can flow from omission of medication quantity in the drug order.  The form of label is only one aspect of the statutory mandate.  Evaluation of the label's contents is necessary but not sufficient to determine whether a pharmacist is exposed to criminal liability for filling an order for medication that lacked information on the quantity of medication to be dispensed.  As one Texas court has noted, § 483.042(a)(1) requires a "*valid* prescription *as*

18

*well as* a label." *Swain*, 2011 WL 6415118, at \*10 (emphasis added).  For the purposes of the Texas Dangerous Drugs Act, the definition of prescription includes "the name ***and quantity*** of the drug prescribed."  § 483.001(13)(D) (emphasis added).

Indeed, there are serious risks to the public where information was omitted from an order for medication even if the order is signed by an authorized practitioner and a pharmacist issues a proper label.  It is also a criminal offense under Texas law to "forge[] a prescription or increase[] the prescribed quantity of a dangerous drug in a prescription."  TEX. HEALTH & SAFETY CODE § 483.045(a)(1).  An order for medication lacking a specified quantity to be dispensed is particularly susceptible to an unauthorized or forged increase in the amount of medication to be dispensed.  Plaintiff's proffered interpretation of § 483.042 is belied by the plain language of the statutes in issue and is contrary to Texas case law.

In accordance with the Fifth Circuit's ruling, Brooke may testify to his view of the standard of care, *i.e.*, what a reasonably prudent pharmacist would have done under the circumstances presented.  *See* Opinion [Doc. # 66], at 6.  He may not, however, offer his own legal conclusion as to the meaning of § 483.042.[11]

---

[11]    Interpretation of federal and state laws is reserved for judges, and not expert witnesses.  *See Highland Capital Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014) (Smith, J.) ("We agree with the district court's (continued…)

Defendant's Motion for Judicial Notice is **granted** and Plaintiff's Limine Motion is **denied**.

## IV.   <u>CONCLUSION</u>

Based on the foregoing analysis, it is hereby

**ORDERED** that Defendant Wal-Mart's Motion to Strike Expert Testimony of Valerie Purcell [Doc. # 72] is **granted** as to the topic of whether Plaintiff will need a heart transplant and expenses flowing therefrom, but otherwise is **denied**.  It is further

---

(continued…)

observation that the report is excludable because it makes several legal conclusions reserved for the court . . . ."); *Sunstar, Inc. v. Alberto-Culver Co.*, 586 F.3d 487, 495 (7th Cir. 2009) ("When a court in one U.S. state applies the law of another state, or when a federal court applies state law, the court does not permit expert testimony on the meaning of the 'foreign' law, even if it is the law of Louisiana, which is based to a significant degree on the French Civil Code."); *FAA v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983) ("First, questions soliciting the former FAA employee's understanding of the meaning and applicability of [certain federal aviation regulations] would invade the province of the court to determine the applicable law and to instruct the jury as to that law."); *Arredondo v. Flores*, No. Civ. A. L-05-191, 2007 WL 4563419, at *1 (S.D. Tex. Feb. 15, 2007) (Arce-Flores, M.J.) ("Expert testimony regarding the interpretation of law would usurp the role of the Court.").  The Court concludes here that even if this were the rare case where the Federal Rule of Evidence 403 inquiry applies to expert testimony regarding the content of domestic law, such testimony is unnecessary because the meaning of § 483.042 is clear.

**ORDERED** that Defendant Wal-Mart's Motion in Limine to limit the subject matter of Dr. Raymond Russell's testimony [Doc. # 73], at 3, ¶ 16, is **granted**.  It is further

**ORDERED** that Defendant Wal-Mart's Motion to Strike Expert Testimony of Bill C. Pittman [Doc. # 80] is **denied** as moot.  It is further

**ORDERED** that Defendant's Motion for Judicial Notice [Doc. # 97], at 6, is **granted** and Plaintiff's Limine Motion is **denied**.

SIGNED at Houston, Texas, this  18th  day of **January, 2016**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE